UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re

                    CARLOS MOTA

                                                    Case No. 10-13989
                                        Debtor.

---

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEBTOR'S OBJECTION TO CLAIM.

### PRELIMINARY STATEMENT

Wells Fargo Bank, N.A. as servicer for HSBC Bank, USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-8 ("Wells Fargo"), by the undersigned attorneys, Steven J. Baum, P.C., Natalie A. Grigg, Esq., submits this brief in opposition to Debtor's Objection to Claim. The factual and procedural background is set forth in the accompanying Affirmation of Natalie A. Grigg, Esq. ("Grigg Affidavit") and will not be reiterated herein. For the reasons set forth herein, the Court should deny Debtor's Objection to Claim and allow the Proof of Claim in its entirety.

### ARGUMENT

### POINT I

### WELLS FARGO AS SERVICER HAS STANDING TO FILE
### THE PROOF OF CLAIM.

In order to file a proof of claim, a claimant must be a "creditor or a creditor's authorized agent." Fed. R. Bankr. Pro. 3001(b). A creditor is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. §101(10)(A). Additionally, a claim is a "right to payment" or a "right to an equitable

1

remedy for breach of performance if such breach gives rise to a right to payment...." 11 U.S.C. §101(5)(A) and (B).

It is well established that "a servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer." *In re Minbatiwalla*, 424 B.R. 104, 109 (Bankr. S.D.N.Y. 2010) *citing In re Conde-DeDonato*, 391 B.R. 247, 250 (E.D.N.Y. 2008). This is due to the fact that a servicer has a pecuniary interest in the loan by virtue of its servicing activities for which it receives compensation." *In re Viencek*, 273 B.R. 354, 358 (N.D.N.Y. 2002) (A mortgage servicer was a real party in interest and had standing to object to a Motion to Expunge a Proof of Claim because of its pecuniary interest in the mortgages it services); *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002) (Loan servicer was a party in interest in debtors' bankruptcy proceedings involving loan which it serviced, as servicer possessed rights sought to be enforced in bankruptcy claim and had an economic interest in the debt.). A loan servicer may establish its standing to file a Proof of Claim where the loan servicer "'provided an affidavit attesting that it is the servicer of the note and mortgage, has provided the original note and mortgage, was listed on the Debtor's Schedules as having a claim against the estate and was provided for in the Debtor's Chapter 13 Plan." *Minbatiwalla*, 424 B.R. at 109 *citing Conde-Dedonato*, 391 B.R. at 250.

A review of the documents in this matter establishes that Wells Fargo is the servicer. First, Wells Fargo has provided the Affidavit of Paul Brown that sets forth that Wells Fargo is the servicer for the Trust. Likewise, your affiant's office has the original note to produce at the hearing that shows the blank endorsement. Additionally, the Debtor has acknowledged Wells Fargo Home Mortgage as a creditor holding a secured claim in his schedules and has provided for payment of the arrears in the Chapter 13 Plan. As noted, Wells Fargo Home Mortgage is a

2

division of Wells Fargo Bank, N.A. and the servicing performed by Wells Fargo Bank, N.A. was to be performed by Wells Fargo Home Mortgage.

Further, by the Debtor's own moving papers, the Debtor has shown that Wells Fargo Bank, N.A. is the servicer. Attached as Exhibit F to the Objection to Claim is a copy of the Pooling and Servicing Agreement that sets forth that Wells Fargo is the document custodian, that Wells Fargo Bank, N.A. is the servicer, and that the initial servicing shall be performed by Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. Therefore, there is ample proof before this Court that Wells Fargo is the authorized servicer for the Mortgage Debt. Additionally, the Servicing Agreement for the Trust specifically designates Wells Fargo with the authority and duty to represent the Trust in any bankruptcy proceedings. Therefore, Wells Fargo has standing to file the Proof of Claim.

A review of the Debtor's schedules show that he lists his interest in the Mortgaged Premises, and that Wells Fargo Home Mortgage is listed as having a secured claim against the estate with respect to property commonly known as 2564 Pearsall Avenue, Bronx, New York. Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. Any dispute by the Debtor that Wells Fargo is not a creditor is wholly disingenuous as the Debtor has submitted pre-petition and post-petition payments to Wells Fargo. Likewise, the Debtor has not listed the Debt as disputed, so to come forward now, after the Debtor and his attorney have both attested to the truth of the schedules raises the question of whether the instant objection was filed in good faith.

As the servicer, Wells Fargo is entitled to receive payments and even commence foreclosure in the event of a default. Wells Fargo has a right to be paid on the Note and Mortgage. This pecuniary interest gives Wells Fargo the right to file the instant claim. Therefore, the Debtor's argument as to standing must fail.

## POINT II

## WELLS FARGO HAS CONSTITUTIONAL STANDING TO
## FILE THE PROOF OF CLAIM.

"Standing requirements emanate from *Article III of the Constitution,* which limits judicial power of courts to actual cases and controversies." *Bridge v. AAMES Capital Corp.*, 2010 U.S. Dist. LEXIS 103154 at *5 (N.D. Ohio Sept. 28, 2010). "To satisfy Article III's standing requirement, a plaintiff must have [1] suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; [2] the injury must be 'fairly traceable' to the challenged action; and [3] there must be a substantial likelihood that the relief requested will redress or prevent plaintiff's injury." *Id.* (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.* 454 U.S. 464, 472 (1982)).

Wells Fargo has standing to file the proof of claim because it can easily meet the standing requirements of Article III. First, Wells Fargo has standing to file the Proof of Claim as the servicer for the Trust. Under the terms of the PSA, Wells Fargo is the current servicer for the Note. As per the Servicing Agreement entered into as part of the PSA and located on the SEC website, Wells Fargo as servicer must undertake such duties as maintaining complete and accurate records of all transactions affecting any mortgage loan, including such information as the current unpaid principal balance, the date of receipt and amount of any payment and distribution of such payment, the interest rate for any ARM loans, loan histories, overdraft of escrow funds, and any other information maintained by a mortgage loan servicer. Wells Fargo may enforce any Due-On-Sale Clauses, record assignments, and even has the right to waive the requirement to assign the security interest. The servicer is responsible for representing the interests of the Trustee in any bankruptcy proceedings and may commence foreclosure proceedings.

4

When the Debtor fails to submit the monthly payments, Wells Fargo is forced to hold onto a debt that is essentially becoming a loss, and advance taxes and other fees for which it is otherwise not being reimbursed. Wells Fargo not being paid pursuant to the terms of the Note is directly traceable to the Debtor's actions, or more appropriately omission to pay on the Mortgage obligation. In being permitted to file the Proof of Claim in the present bankruptcy case, this injury will be redressed because Wells Fargo will receive ongoing payments as well as be paid through the Chapter 13 plan for any amounts it paid out prior to the bankruptcy filing.

Additionally, the proof demonstrates that the Trust is the owner of the Note, and that Wells Fargo as servicer has the authority to represent the Trust in the present bankruptcy proceeding. The Note and Mortgage were securitized and deposited into the Trust on or before the closing date. The Affidavit of Paul Brown sets forth that Wells Fargo Bank, N.A. became the owner and holder of the Note shortly after the closing of the loan and subsequently the loan was transferred to the Trust. The Mota Loan is properly listed in the Schedule of Mortgage Loans and thus was included in the Trust on or before the closing date. Further, inspection of the original Note demonstrates that it contains the proper endorsements. Likewise, Wells Fargo Bank, N.A. as custodian has possession of the Note. This satisfies the requirement that the original Note be delivered to the document custodian.

Based on the foregoing, the Trust is the owner of the Note and has a claim against the Debtor. Wells Fargo as servicer thus has the right to file the Proof of Claim on its behalf because as servicer it is authorized to represent the Trustee in any bankruptcy proceedings. Therefore, both the Trust and Wells Fargo have standing in this proceeding to file the Proof of Claim.

## POINT III

### THE DEBTOR HAS NO STANDING TO CHALLENGE THE VALIDITY OF THE ASSIGNMENT.

As noted above, standing requirements emanate from *Article III of the Constitution.* "To satisfy Article III's standing requirement, a plaintiff must have [1] suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; [2] the injury must be 'fairly traceable' to the challenged action; and [3] there must be a substantial likelihood that the relief requested will redress or prevent plaintiff's injury." *Bridge v. AAMES Capital Corp.*, 2010 U.S. Dist. LEXIS 103154 at *5 (N.D. Ohio Sept. 28, 2010) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.* 454 U.S. 464, 472 (1982)).

Application of these factors to the present case leads to the conclusion that the Debtor has no standing to challenge the assignment. Here it is abundantly clear that the Debtor owes a debt. The Debtor does not dispute that he signed the Note and Mortgage, and did not list the debt as disputed within his schedules.

Challenging the validity of an assignment fails to state a claim of injury since the challenge is not whether such a debt exists, but rather to whom it is owed. *See Livonia Property Holdings, LLC v. Farmington Road Holdings, LLC*, 717 F.Supp.2d 724 (E.D. Mich. May 13, 2010). In *Livonia*, the Borrower was challenging the Lender's right to foreclose on the grounds that the failure to record interim assignments rendered the chain of title defective and precluded the foreclosure. There, the Borrower entered into a Commercial Mortgage Loan with Lehman Brothers Bank, FSB that was secured by four industrial properties. The loan documents ultimately were assigned to LaSalle Bank National Association, as Trustee for the registered holders of LB-UBS Commercial Mortgage Trust 2005-C1, however there were two interim transfers that occurred that were not reflected in separate assignments. The Borrower alleged

6

that the failure to record the interim assignments rendered the chain of title defective. The Court found that the foreclosure was not affected by the failure to file the interim assignments because only the record holder could foreclose and "the mortgagor was not affected by the fact that others had an unrecorded interest in the mortgage…." *Livonia*, 717 F.Supp. at 734-735.

The same reasoning applies here. In the present case, the Debtor alleges that there should be assignments to various entities. This claim fails because not having interim assignments in no way affects the Debtor or the entity that is the ultimate holder of the Note. As can be seen, the Debtor executed the Note to MLD Mortgage, Inc. and the Mortgage to MERS as nominee for MLD Mortgage, Inc. The Affidavit of Paul Brown establishes that Wells Fargo Bank, N.A. became the holder and owner of the Note as of April 28, 2006, shortly after the loan originated. The loan was subsequently transferred into the Trust as can be seen by the loan schedules filed with the SEC website. The corresponding loan number for this mortgage loan is readily apparent on multiple pages of that document, thus establishing that it was placed in the Trust.

It is well established within New York that an assignment of mortgage is not required to effect the validity of a transfer. *See also* Bergman on New York Mortgage Foreclosures, § 16.05(1b)(a); *Flyer v. Sullivan*, 284 A.D. 697, 134 N.Y.S.2d 521 (1st Dep't 1954), *citing Levy v. Louvre Realty Co.*, 222 N.Y. 14, 20, 118 N.E. 207 (1917). As Bruce J. Bergman concludes,

> "A written assignment is not a prerequisite to the validity of an assignment of a mortgage because a mortgage can be assigned by mere delivery. Similarly expressed, there is no legal need for an assignment in writing. Rather an effectual mortgage assignment is accomplished by delivery only. Succinctly summed up, *__title to a note and mortgage passes by delivery of those instruments and no formal written transfer is necessary.__*"

Therefore, the fact that there is not an assignment to denote each transfer does not affect the Borrower. Ultimately, the Note and Mortgage was transferred into the Trust.

7

Further, the claim that the assignment is invalid does not state a claim to injury as inevitably the true holder has a right to remedy under state law for the debtor's defaulting on her mortgage. "Although a debtor may assert certain defenses that render an assignment invalid (such as the nonassignability of the right assigned), he generally may not assert any ground which may render the assignment voidable 'because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice." *Livonia Property Holdings*, 717 F.Supp.2d at 736.

As the court in *Bridge* succinctly stated, "regardless of the outcome of this litigation, Plaintiff is still in default on her mortgage and subject to foreclosure. As a consequence, Plaintiff has not suffered any injury as a result of the assignment between [assignor] and [assignee] ..." 2010 U.S. Dist. LEXIS 103154 at *13 (N.D. Ohio Sept. 28, 2010). In *Ifert v. Miller*, 138 B.R. 159 (Bankr. E.D. Pa. 1992) the court held that a debtor could not challenge the validity of an assignment. The court stated that:

> [The underlying contract] is between [Debtor] and [Assignor]. [Assignor's] assignment contract is between [Assignor] and [Assignee]. The two contracts are completely separate from one another. As a result of the assignment of the contract, [Debtor's] rights and duties under the [underlying] contract remain the same: The only change is to *whom* those duties are owed....[Debtor] was not a party to [the assignment], nor has a cognizable interest in it. Therefore, [Debtor] has no right to step into [Assignor's] shoes to raise [its] contract rights against [Assignee]. [Debtor] has no more right than a complete stranger to raise [Assignor's] rights under the assignment contract.

*Id.* at 166 n.13.

A debtor generally cannot challenge an assignment since the debtor's underlying obligations to the true holder remain unaffected, and thus the debtor lacks any interest in the assignment that would merit a cause of action against the assignee. As the court in *Infert*

explained, it is not a matter of whether the debtor's obligation remains but rather a matter of "to *whom* those duties are owed." *Id.*

It has long been recognized that a party to an underlying contract, here the Debtor, may not challenge another party's subsequent assignment and lacks standing to challenge its validity or enforcement. *See e.g. Livonia Property,* ("Borrower may not challenge the validity of assignments to which it was not a party or third-party beneficiary, where it has not been prejudiced, and the parties to the assignments do not dispute (and in fact affirm) their validity."); *Rogan v. Bank One,* 457 F.3d 561, 567 (6th Cir. 2006) ("because neither the debtors nor the Trustee [were] parties to the [assignment]... [t]hey lack standing to enforce it; they cannot claim to have relied on it."); *Pierce v. Wells Fargo Bank,* 2006 U.S. Dist. LEXIS 96896 at *3 (N.D. N.C. Sept. 29, 2006) ("It is well-accepted that unless a contract explicitly prohibits assignment, an assignment is valid over one party's objection."); *Liu v. T&H Mach., Inc.,* 191 F.3d 790, 797 (7th Cir. 1999) (party to underlying contract lacks standing to "attack any problems with the reassignment" of that contract); *Nicolls Pointing Coulson, Ltd. v. Transp. Underwriters of La., Inc.,* 777 F. Supp. 493 (E.D. La. 1991) ("a debtor cannot challenge an assignment of a debt by a creditor unless he can show he is prejudiced by the assignment"); *In re Holden,* 271 N.Y. 212, 2 N.E.2d 631 (N.Y. 1936) ("The assignments were valid upon their face. The assignee was the legal owner of the claims assigned. No one could question the validity of the assignments except the assignors."); *Blackford v. Westchester Fir Ins. Co.,* 101 F. 90, 91 (8th Cir. 1900) ("As long as no creditor of the assignor questions the validity of the assignment, a debtor of the assignor cannot do so."); *The Prussia,* 100 F. 484 (D. Wash. 1900) (holding the validity of an assignment cannot be collaterally attacked on the ground of alleged technical irregularities by a non-party to the assignment, where no objection is made by the assigning entity);   Richard A. Lord, 29

Williston on Contracts § 74:50 (4th Ed.) ("[T]he debtor has no legal defense [based on invalidity of the assignment]… for it cannot be assumed that the assignee is desirous of avoiding the assignment.").

In the present case, the Debtor has failed to show any contractual right that would enable him to challenge the validity of the assignment. There is nothing within the Mortgage that restricts the Lender from selling or transferring its rights. The Debtor is not a party to the assignment, and as a third-party has no standing to challenge its validity. The Debtor has not suffered any injury as a result of the assignment. Typically, the only change for the Debtor is to whom she owes her payments, not whether she owes on the Debt. However, here, not even the "to whom" of the transaction is changing because Wells Fargo Bank, N.A. is the service entitled to receive payments under the terms of the PSA. The Debtor is not paying the same monthly mortgage payment twice, nor does he have two creditors competing over being paid on the debt. Therefore, the Debtor cannot show any injury as a result of the assignment, and cannot prove he has standing to challenge same.

## POINT IV

### THE CONVEYANCE TO THE TRUST IS VALID.

The Debtor's allegations questioning the conveyance of the mortgage loan to the Trust must fail. The Debtor is not a party to the Pooling and Servicing Agreement, nor is the Debtor a beneficiary of the Trust involving the Note and Mortgage. The Debtor's obligations under the Note and Mortgage are not affected by how the parties to the PSA choose to perform their contract, including with respect to transfers or assignments or negotiable instruments such as the Note and Mortgage. Simply put, the Debtor has no standing to intervene in or challenge the

10

operation of any agreement or acts taken thereunder. *See Caravella v. City of New York*, 79 Fed.

Appx. 452 (2d. Cir. 2003). This is further supported by the fact that Section 1.04 of the PSA

entitled "Benefits of Agreement" states that

> "Nothing in this Agreement or in the Certificates, express or
> implied, shall give to any Person, other than the parties to this
> Agreement and their successors hereunder and the Holders of the
> Certificates any benefit or any legal or equitable right, power,
> remedy or claim under this Agreement."

Therefore, the Debtor's allegations regarding the validity of the conveyance to the Trust

must be dismissed.

In the event the Court finds that the Debtor can challenge the conveyance to the Trust, the

Debtor's argument must still fail. The Debtor's argument that the loan was transferred in

violation of the Pooling and Servicing Agreement and New York Trust Law is without merit. As

noted, the original Note contains a blank endorsement as required by the PSA and per the terms

of the PSA, the Note was to be delivered to the document Custodian, to wit: Wells Fargo Bank,

N.A. to hold on behalf of the Trust. As Wells Fargo Bank, N.A. was the owner of the Note prior

to the conveyance to the trust, transferring the Note to the document custodian remained that

must easier since Wells Fargo continued to maintain possession after the conveyance.

Additionally, Debtor's argument also fails because the Debtor refers only to the PSA,

however, there are multiple documents that are related to the operation of the Trust including the

Servicing Agreement, the Mortgage Loan Purchase Agreement, and the Mortgage Loan

Schedules, just to name just a few. It is important for the Court to take into account all

documents governing the Trust since the documents set forth various obligations and

responsibilities with respect to the Trust and the parties' rights thereunder. By example, the

Servicing Agreement, which outlines the responsibilities of the Master Servicer and Servicer,

11

specifically allows for waiver of the assignment requirement. Therefore, any challenges to the conveyance of the mortgage loan to the Trust must fail.

Further, under New York law, a trust is valid where the following elements exists: (1) a designated beneficiary; (2) a designated trustee, who must not be the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) the actual delivery of the fund or other property, or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto. *See Brown v. Spohr*, 87 A.D. 522, 529 (1st Dept. 1903).

In the present case, the PSA establishes the existence of a valid trust. The PSA sets forth the designated beneficiary, the designated trustee, and a fund. In fact, by its own terms, the PSA acts to assign the loans being deposited into the Trust as set forth in Section 2.01 of the PSA, which states that "the Depositor, concurrently with the execution and delivery hereof, does hereby assign to the Trustee, without recourse all the right, title, and interest of the Depositor...." In connection with the assignment, the Depositor was required to deliver to the Custodian the original Note endorsed in blank. The Prospectus from the SEC website that is dated June 28, 2006 and filed on June 29, 2006 shows the mortgage loan was transferred into the Trust. This clearly evidences intent to pass legal title.

As per the terms of the PSA, Wells Fargo Bank, N.A. is the custodian that holds the Note on behalf of the Trustee and Trust. Upon receipt of the original Note from Wells Fargo Bank, N.A. it was determined that the original Note contained a blank endorsement. Therefore, the Note was endorsed as per the terms of the PSA and was properly transferred into the Trust.

Additionally, the PSA requires that the loan documents be delivered to the Custodian. As noted, Wells Fargo Bank, N.A. was the prior holder of the Note and then became the Custodian

12

under the PSA. Thus, delivery was rather simple to accomplish seeing that the Note remained with Wells Fargo to hold on behalf of the Trust.

Further, by its own terms the PSA effectuates a legal assignment of the mortgage loan to the Trust. Section 2.01 of the PSA provides that "the Depositor, concurrently with the execution and delivery hereof, does hereby assign to the Trustee, without recourse, all right, title and interest of the Depositor...." The PSA's unambiguous contract terms are thus clearly designed to effectuate a legal assignment as required by New York Law. Notably, there is no provision within the PSA that notes that failure to follow the PSA's additional terms render the conveyance invalid. There is no basis in contract law or New York trust law for such a claim.

Likewise, any argument that the purported assignment is void under controlling New York law is without merit because New York law does not require the recording of an assignment to effectuate a transfer. The provisions of the EPTL cited by the Debtor do not address the requirements under New York law for an assignment to be valid. Notably, EPTL § 7-2.4 falls within that section of the EPTL entitled "Rules Governing Trustees." In the present case, the Trustee is HSBC Bank USA, National Association. The Debtor cannot point to any action or inaction with relation to the Trustee that would be in contravention of the trust and thereby by void. Thus, this argument wholly fails.

## POINT V

## THE KENNERTY ASSIGNMENT IS VALID.

Assuming arguendo that the Court finds the Debtor has standing to challenge the assignment, the Debtor's argument still fails because it is wholly unfounded and without merit. Mr. Kennerty holds the position of Assistant Secretary and Vice President of MERS pursuant to the signing authority granted to him by MERS. MERS granted this signing authority as a

13

convenience to MERS to allow for assignments to be completed expeditiously. As such, Mr. Kennerty executed the assignment out of the MERS system and to HSBC Bank, USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-8.

The MERS System was created in 1993 by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages. *See MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 268 (2006). The Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Mortgage Bankers Association of America and others participated in the creation of MERS. The Court of Appeals has explained, "[m]ortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system." *Id.* The initial mortgage is recorded in the County Clerk's office, and MERS is named as the lender's nominee or mortgagee of record. The beneficial ownership interest or servicing rights may then be transferred among MERS members without the necessity of recording these transfers in the Clerk's office. Rather, such assignments are tracked electronically in the MERS system. *See id.* Once a mortgage is going to be assigned outside of the MERS system, then an assignment like the one at issue is executed and recorded. If the mortgage continued to be transferred among and between MERS members, then no such assignment would be required.

In the present case, the Debtor executed a Mortgage wherein he acknowledged that MERS was the nominee for MLD Mortgage, Inc., thus placing the Mortgage within the MERS system. Thereafter, Wells Fargo Bank became the owner of the Note and subsequently

transferred the Note into the Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-8 Trust. To memorialize this transfer, an Assignment was executed to take the Mortgage out of the MERS system.

A Corporate Resolution was entered into that granted certain Wells Fargo employees limited signing authority on behalf of MERS. The Corporate Resolution from MERS specifically appointed Mr. Kennerty, among others, an Assistant Secretary and Vice President of MERS for the limited purpose of performing a merely ministerial act -- executing mortgage documents, including assignments of mortgages necessary to foreclose on a mortgage loan registered on the MERS system. The Resolution granted Mr. Kennerty signing authority only and nothing more.

Granting this type of signing authority to outside individuals has allowed MERS to eliminate the unnecessary and time-consuming steps involved in having the necessary paperwork shuttled back and forth to MERS for signature and execution. Pursuant to this initiative by MERS to streamline the assignment process, several employees, including Mr. Kennerty, received appointments as "Assistant Secretary and Vice President" of MERS. Therefore, Mr. Kennerty was within his authority when the assignment was executed from MERS to HSBC Bank, USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-8. Importantly, seeing as Mr. Kennerty was authorized to sign pursuant to the Corporate Resolution, there can be no conflict of interest.

Following execution of the Kennerty assignment here, which merely records that the Mortgage was transferred out of the MERS system, MERS retained no interest whatsoever in the mortgage, or in this matter. Therefore, as the assignment was out of the MERS system solely, there was no transfer of an interest and the Debtor's argument is without merit.

Based on the foregoing, the Assignment executed by Mr. Kennerty was valid and the

Debtor's arguments must fail.

### A. The Assignment is valid because New York Agency and Contract Law support MERS' role as the disclosed agent for its member lenders.

New York State case law has recognized that MERS has the right not only to record its

assignments and discharges of mortgages, but also to outright foreclose on and sell property

subject to one of its mortgages. *See e.g. MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 828

N.Y.S.2d 266, 268 (2006), *Mortgage Electronic Registration Systems, Inc. v. Coakley*, ___

A.D.2d ____, 2007 N.Y.Slip Op. 05478 (2d Dept. June 19, 2007); *see also U.S. Bank, N.A. as*

*Trustee for Deutsche ALT-A Securities Mortgage loan Trust Series 2007-2 v. Flynn*,

____A.D.2d____; 2010 N.Y. Slip. Op. 20093 (Sup. Ct. March 12, 2010) (written assignment of

the note and mortgage by MERS confers good title to the assignee and is not defective for lack of

an ownership interest in the note at the time of the assignment.)

MERS' status as a "nominee" is a common occurrence in public land records.

Individuals frequently confer rights to a "nominee," "agent," "fiduciary," or "trustee" to enable

that individual to act on their behalf. *See*, for example, New York Real Property Law (RPL)

§§124 *et seq.* with regard to trustees' powers in mortgage investments. The term "nominee" was

defined in *Schuh Trading Co. v. Commissioner of Internal Revenue*, 95 F.2d 404, 411 (7th Cir.

1938), as follows:

> The word nominee ordinarily indicates one designated to act for
> another as his representative in a rather limited sense. It is used
> sometimes to signify an agent or trustee. It has no connotation,
> however, other than that of acting for another, or as the grantee of
> another . . .

This definition has become accepted as the common meaning of "nominee." *See* Black's

Law Dictionary 1076 (8th ed. Thompson West 2004). Nominees have often been used by

institutional investors in securities registration, to allow the investor to avoid onerous requirements of establishing the right of registration by a fiduciary. In addition, RPL §275(2)(a) expressly recognizes the commercial practice of lenders selling mortgages in the secondary market, as well as the practice of designating "nominees" as representatives in mortgage loan transactions.

It is familiar practice in real estate transactions to use a nominee for a variety of purposes, including to execute or hold mortgage instruments. *Friedman on Contracts and Conveyances of Real Property* § 2.2 (6th Ed.). The validity of nominees in real property transactions has been upheld in New York. For example, in *In Re Cushman Bakery*, 526 F.2d 23, 30 (1st Cir. 1975) (*citing* New York law), *cert. denied* 425 U.S. 937 (1976), the court noted:

> it is clear that the recording of the real estate mortgages and financing statements was entirely proper despite the fact that Bakers, as Seaboard's nominee, rather than Seaboard, as the principal creditor, was named as the mortgagee and secured party. The use of a nominee in real estate transactions and as mortgagee in a recorded mortgage has long been sanctioned as a legitimate practice. (citations omitted) (Emphasis added).

The use of a nominee or agent as a representative of the lender or the mortgagee has been upheld in New York. *See e.g. Fairbanks Capital Corp. v. Nagel*, 289 A.D.2d 99 (1st Dep't 2001) (holding that the servicing agent had standing to maintain a mortgage foreclosure proceeding in its capacity as servicing agent for the trustee lender); *Amherst Factors, Inc. v. Kochenburger,* 4 N.Y.2d 203 (1958); *Mutual Life Ins. Co. v. Nichols*, 144 A.D. 95 (1st Dep't 1911); *In Re Fried Furniture Corp.*, 293 F. Supp. 92 (E.D.N.Y. 1968), *aff'd* 407 F.2d 360 (2d Cir. 1969). New York courts have also recognized the rights of trustees and agents to act on behalf of lenders in a variety of situations. *See, e.g., In Re Lehrenkrauss*, 6 F. Supp. 687 (E.D.N.Y. 1934) (noting that certificates of participating interests in a mortgage made the nominal mortgagee, the trustee and nominee for the certificate holders with the lawful authority to collect interest and principal,

17

distribute such monies and, among other powers, to take such action as may be necessary to enforce the note and mortgage).

The uniform MERS Mortgage clearly demonstrates the lender's delegation of authority to MERS, as its agent in the MERS Mortgage, and the borrower's acknowledgement and acceptance of MERS as the agent of the lender, and its successors and assigns. The MERS Mortgage expressly authorizes MERS to execute assignments, discharges, releases and other documents with respect to the mortgage and security instrument on record in the County Clerk's Office. The MERS Mortgage, being the same form of mortgage executed by the Debtor in the instant proceeding, provides, in relevant part, as follows:

> I [the borrower] understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:
>
> (C) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
>
> (D) to take any action required of Lender, including, but not limited to, releasing and canceling this Security Instrument.

(Emphasis added).

It is well settled in New York that where a mortgage is signed by the mortgagor, delivered to and accepted by the mortgagee, or its agent, the mortgage constitutes a valid contract and security or lien. *See Munoz v. Wilson*, 111 N.Y. 295 (1888); *Wood v. Travis*, 231 A.D. 331 (3d Dep't 1931). The recording of a mortgage is presumptive evidence of delivery by the mortgagor and acceptance by the mortgagee. *See Preston v. Albee*, 120 A.D. 89 (1st Dep't 1907).

As set forth more fully above, the agreement to treat MERS as the lender's agent is contractual between the borrower and lender. The terms of the MERS mortgage are clear and

certain and, as such, the Court's role is limited to interpretation and enforcement of contractual terms. *Strong v. Reeves*, 114 N.Y.S.2d 97 (3rd Dept. 1952); *JJFN Holdings, Inc. v. Monarch Investment Properties*, 736 N.Y.S.2d 66 (2nd Dept. 2001); *Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 623 N.Y.S.2d 790 (1995). Further, it is well-settled that the Court has no authority to make a new contract for the parties or recast the contract between them. *LaVere v. R.M. Burritt Motors, Inc.*, 446 N.Y.S.2d 851 (New York City Ct. 1981); *see also, Mitler v. Friedeberg*, 222 N.Y.S.2d 480 (N.Y. Sup. 1961); *Nemmer Furniture Co. v. Select Furniture Co.*, 208 N.Y.S.2d 51 (N.Y. Sup. 1960); *Empire Sportswear, Inc. v. Newsday, Inc.*, 178 N.Y.S.2d 833 (N.Y. Sup. 1958), *affirmed by* 185 N.Y.S.2d 78 (2nd Dept. 1959); *Royce Furs, Inc. v. Home Ins., Co.*, 291 N.Y.S.2d 529 (1st Dept. 1968); *Barrand v. Quinn*, 98 N.Y.S.2d 1013 (4th Dept. 1950), *affirmed by* 302 N.Y. 744 (1951).

It is clear, therefore, given the text of the Mortgage executed by the Debtor that MERS has been designated as the mortgagee, and as nominee or agent of the lender. When MERS executes instruments as the nominee or agent for the lender, its successors and assigns, MERS is vested with explicit powers to act with respect to the mortgage and the secured real estate. Pursuant to the clear and unequivocal terms of the mortgage instrument, Debtor expressly agreed without qualification that MERS had the right to foreclosure upon the premises as well as ***exercise any and all rights*** as nominee for the Lender. *See e.g. MERS, Inc. v. Coakley*, (support for MERS's standing to commence the action may be found on the fact of the mortgage instrument itself where the Debtor expressly agreed without qualification that MERS had the right to foreclose). Based on the foregoing, the assignment from MERS to HSBC Bank, USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-8 is valid.

Additionally, it is a fundamental principle that the courts should not interfere with the contractual rights set forth in a mortgage agreement. The Court of Appeals held:

> To treat this mortgage as a mechanic's lien, as the Appellate Division did, would constitute an impairment of the obligations of the contract that the parties chose to make. <u>Absent clear statutory authorization to do so, the court should not interfere with such rights.</u> (Emphasis added).

*W. L. Development Corp. v. Trifort Realty, Inc.,* 44 N.Y.2d 489, 499 (1978).

An agreement entered into by an agent pursuant to authority granted by the agency agreement or by instruction of the parties is valid and enforceable. *99 Commercial Street Inc. v. Goldberg,* 811 F.Supp. 900, 906 (S.D.N.Y. 1993). An agency agreement may take any form "desired by the parties concerned." New York General Obligations Law §5-1501(1). Indeed, the public policy of New York requires that there be liberal use and judicial recognition of the efficacy of principal and agency relationships. *See Arens v. Shainswitt,* 37 A.D.2d 274 (1st Dep't 1971), *aff'd* 29 N.Y.2d 663 (1971); *Cymbol v. Cymbol,* 122 A.D.2d 771 (2d Dep't 1986).

MERS' relationship with its member lenders is that of agent with the lender-principal. This is a fiduciary relationship, which results from the manifestation of consent by one person to another allowing the other to act on his behalf, subject to his control and consent. The principal is the one for whom action is to be taken, and the agent is the one who acts. *See* Restatement [Second] of Agency § 1(b)(c); *see also Maurillo v. Park Slope U-Haul,* 194 A.D.2d, 142, 146, (2d Dep't 1993); *Cabrera v. Jakabovitz,* 24 F.3d 372 (2d Cir. 1994), *cert. denied,* 513 U.S. 876 (1994). An agency relationship may be established by conduct, an oral agreement or a written instrument. *See Heine v. Papp,* 97 A.D.2d 929 (3d Dep't 1983). An agent may be appointed to do the same acts and to achieve the same legal consequences as if the principal had himself personally acted, except as to acts which by their nature, by public policy, or by contract require

personal performance or acts which are illegal.  *See Central Trust Co. v. Sheahen*, 66 A.D.2d 1015 (4th Dep't 1978).

In *MERSCORP, Inc. v. Romaine*, the New York Court of Appeals rejected the Suffolk County Clerk's arguments that the MERS Mortgage was improper and did not constitute a conveyance because it named MERS as a nominee and that MERS could not serve as a "mortgagee."  The Court of Appeals explained, "[m]ortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages.  Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system." *Id.*  The initial mortgage is recorded in the County Clerk's office, and MERS is named as the lender's nominee or mortgagee of record.  The beneficial ownership interest or servicing rights may then be transferred among MERS members without the necessity of recording these transfers in the Clerk's office.  Rather, such assignments are tracked electronically in the MERS system. *See id.*  Once a mortgage is going to be assigned outside of the MERS system, then an assignment like the one at issue is executed and recorded.  If the mortgage continued to be transferred among and between MERS members, then no such assignment would be required.  The Court of Appeals found that the uniform MERS Mortgage and assignments and discharges executed by MERS constituted conveyances entitled to be recorded in County Clerks' offices in New York.

Likewise, the court in *US Bank, N.A. v Flynn*, 2010 NY Slip Op 20093, 4 (N.Y. Sup. Ct. 2010) found that

> "where an entity such as MERS is identified in the mortgage indenture as the nominee of the lender and as the mortgagee of record and the mortgage indenture confers upon such nominee all of the powers of such lender, its successors and assigns, a written assignment of the note and mortgage by MERS, in its capacity as nominee, confers good title to the assignee and is not defective for lack of an ownership

interest in the note at the time of the assignment. In such cases, MERS is acting as the nominee of the owner of the note and of the mortgage, in which MERS is additionally designated as the mortgagee of record. No disconnect between the note and mortgage occurs when MERS acts, at the time of the assignment, as the nominee of the original lender or a successor owner or holder of the note and mortgage. Consequently, a MERS assignment does not violate this State's long standing rule that a transfer of a mortgage without a concomitant transfer of the debt is void."

Similarly, Federal Courts across the United States have also found that MERS has the authority to execute assignments as a nominee for a lender. In *Kiah v. Aurora Loans Services*, 2010 U.S. Dist. LEXIS 121252 (Dist. M.A. November 16, 2010), the court found that MERS could assign the mortgage even if it "never had possession of or a beneficial interest in the note...because MERS was holding the mortgage in trust...." 2010 U.S. Dist. LEXIS 121252 at *17. The court also found that "even though MERS does not have a beneficial interest in the property, it nonetheless could have transferred the mortgage on behalf of the beneficial owner." 2010 U.S. Dist. LEXIS at *18.

Likewise in *Perry v. Nat'l Default Servicing Corp.*, 2010 U.S. Dist. LEXIS 92907 (Dist. N.D.C.A. August 20, 2010) also upheld an assignment from MERS to Kondaur Capital Corporation because the Deed of Trust stated that MERS was nominee for the Lender, and also contained the MERS Mortgage language where in the Borrower agreed that MERS held legal title and had the right to foreclose. The court there found that the Debtor had initialed that page of the Deed of Trust and found that "the plain language of the Deed, MERS was the beneficiary and could exercise 'all of [Borrower's] interests,' including foreclosure rights." 2010 U.S. Dist. LEXIS 92907 at 11. The court went on to state that "courts interpreting trust deeds appointing MERS as beneficiary and nominee, as this one does, have held that 'MERS had the right to assign its beneficial interest to a third party.'" *Id. See also Croce v. Trinity Mortg. Assur. Corp.* 2009 U.S. Dist. LEXIS 89808 (Dist. NV September 28, 2009) (court found that MERS had

22

standing as a beneficiary under the Note and Deed of Trust to participate in the foreclosure proceedings);

Whether MERS is identified as the "mortgagee" or the "nominee" (that is, the agent) for the lender in a mortgage instrument, MERS fits squarely within the scope of persons authorized by Real Property Actions and Proceedings Law ("RPAPL") §1921(9) (a) to serve as a mortgagee and execute and deliver discharges of mortgages:

> Mortgagee" means (i) the current holder of the mortgage of record or the current holder of the mortgage, or (ii) any person to whom payments are required to be made or (iii) their personal representatives, agents, successors, or assigns. (emphasis added).

Similarly, RPAPL §1921-a requires the mortgagee, as defined above, to execute and deliver partial releases of lien. In other statutory mandates, the RPL obligates the mortgagee to perform various transactions. For example, RPL §274-a requires the mortgagee to execute and deliver a loan payoff statement and other mortgage-related documents, such as abstracts of title and title insurance policies in the mortgagee's possession. RPL §275 requires the mortgagee to execute and deliver a discharge of mortgage upon tender of payment, and also authorizes the mortgagee to execute and deliver an assignment of mortgage if it is traded or sold in the secondary mortgage market. Because the MERS Mortgage names MERS the "mortgagee," and the mortgage discloses that MERS is the "nominee" or "agent" for the lender, its successors and assigns, and as shown above, MERS is fully authorized to perform the duties of the mortgagee in accordance with these statutory mandates, including the execution and delivery of the assignment of mortgage at issue in this proceeding.

Based on the foregoing, the assignment from MERS to HSBC Bank, USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-8. was authorized and is valid. A review of the Mortgage demonstrates that

the Debtor agreed that MERS was the mortgagee of record and nominee for MLD Mortgage, Inc. Accordingly, the assignment executed by MERS as the authorized and disclosed agent for the lender and its successors in interest is valid and effective.

## POINT V

## THE ASSIGNMENT OF MORTGAGE IS NOT A VOIDABLE TRANSFER PURSUANT TO BANKRUPTCY CODE §549(s)(1)(B).

The Debtor's argument that the assignment of mortgage is a voidable transfer is without merit. The Debtor's only means by which to avoid the assignment is by using the trustee avoidance powers set forth in 11 U.S.C. § 549. There is specific statutory authority set forth in §1303 of the Bankruptcy Code that provides that the debtor shall have "the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l)...." 11 U.S.C. § 1303. There is no such statutory authority providing the Debtor with authority to use the trustee's avoidance powers under Chapter 5 of the Bankruptcy Code. In light of this, courts have recognized that due to the lack of explicit statutory authority, a Chapter 13 Debtor does not have standing to use the trustee's avoidance powers under Chapter 5. *See In re Binghi*, 299 B.R. 300, 2003 Bankr. LEXIS 1265 (Bankr. S.D.N.Y. 2003); *Carey v. Ernst*, 333 B.R. 666, 2005 U.S. Dist LEXIS 27294 (S.D.N.Y. 2005). Therefore, the Debtor's argument to avoid the assignment is without merit as the Debtor does not retain the ability or authority to do such.

Additionally, Section 549 is inapplicable here as "this section is a protection for creditors and generally applies only when the debtor initiates a sale or transfer of estate property." *In re Blair*, 2000 Bankr. LEXIS 2115 at *31 (Bankr. Idaho 2000).

The mere assignment of a deed of trust is not an avoidable transfer. The "recording of the assignment is for the benefit of third parties; it has no bearing on the rights as between the assignor and assignee." *In re United Home Loans, Inc.,* 71 B.R. 885, 891 (W.D. Washington 1987). In the present case there has been no post-petition transfer of property. Here, the Deed of Trust was recorded with the Official Records of the County of Williamson. The Debtor owned the real property as of the commencement of the instant case. The assignment of the Deed of Trust has done nothing to affect the Debtor's ownership rights in the property.

Based on the foregoing, the Debtor's argument is without merit and the Court should deny Debtor's motion.

## POINT VI

### THE POST PETITION EXECUTION OF THE ASSIGNMENT DOES NOT VIOLATE THE AUTOMATIC STAY.

The post-petition execution of an assignment is not a violation of Section 362(a)(4) or (a)(5) of the Bankruptcy Code, and the Debtor cites to no legal authority to support his allegations.

Contrary to Debtor's assertions, it is well established that the post-petition recordation of the assignment is not a violation of the automatic stay. *See In re Mullin,* 433 B.R. 1 (S.D.TX 2010). The sale of a Mortgage is the sale of a commodity and not the creation, perfection, or enforcement of a lien against the Mortgaged Premises. The creation of the lien took place at the time the Note and Mortgage were executed by the Debtor, and was perfected when the Mortgage was recorded with the New York Department of Finance Office of the City Register on June 14, 2006.

The recording of the original Mortgage perfects the lien against the Debtor's property and serves as constructive notice that a mortgage lien exists. *See e.g. Mullin, see also In re Cook,*

457 F.3d 561 (6th Cir. 2006).   Under New York law, the date the mortgage is recorded is the operative point for determining the rights of those claiming under the mortgage.   *See Alliance Funding Co. v. Taboada*, 39 A.D.3d 784 (2d Dep't 2007).   Thus, the written assignment dated after the bankruptcy was filed did not affect the pre-petition perfection of the lien as against the Debtor's property.   *See, e.g., Cook*, 457 F.3d at 567 (holding that creditor's failure to file an assignment prior to the bankruptcy filing "did not affect the perfection of the lien as against the mortgagors and those claiming through them"); *Fannie Mae v. Kuipers*, 314 Ill. App. 3d 631 (Ill. App. Ct. 2000) (holding that the assignee of a mortgage was not required to record the assignment because the assignee "stood in the shoes" of the mortgage company, which had recorded its interest);   *See also, generally Obuchowski v. Associates Nat'l Mortgage Ass'n (In re Briggs)*, 186 B.R. 830, 833 (Bankr. D. Vt. 1995) (holding that a bankruptcy trustee could not avoid a mortgage lien based on the fact that the mortgage assignment was unrecorded, because the recording of the original mortgage gave the trustee constructive notice).

In fact, an assignment of a properly perfected mortgage merely represents a transfer of a lien's ownership between creditors, rather than a perfection of the underlying lien against the property.   *See Kapila v. Atlantic Mort. & Inv. Corp. (In re Halabi)*, 184 F.3d 1335, 1337 (11th Cir. 1999) ("In each instance, the assignment was merely the transfer of one mortgagee's interest to a successor mortgagee."); *Patton v. State Street Bank (In re Patton)*, 314 B.R. 826, 833 (Bankr. D. Kan. 2004) (holding that where a mortgage is properly perfected pre-petition, subsequent assignments do not violate the automatic stay, and that recording such assignments would likely be ministerial in nature).

Here, the Debtor executed the Mortgage in 2006, approximately 4 years before he filed for bankruptcy.   Thus, the lien on the Debtor's real property was perfected at that time.

Therefore, Debtor's argument that the automatic stay has been violated is without merit, contrary to case law, and ultimately must fail.


## POINT VII

### THE DEBTOR'S CLAIM REGARDING A VIOLATION OF
### 15 U.S.C. 1641 IS INAPPLICABLE AND TIME BARRED.

The Debtor's argument that there has been a violation of 15 U.S.C.1640(A) fails to account for the fact that the sale and transfer in this case took place in 2006, shortly after the loan was originated. Notably, the Debtor relies on 15 U.S.C. 1641(g), however this provision did not go into effect until May 2009 and therefore is not applicable to a transfer that took place in 2006. As per the affidavit of Paul Brown, Wells Fargo took possession of the Note as of April 2006 and then transferred the mortgage loan to the Trust in June 2006. Therefore, the transaction occurred three years prior to the enactment of this provision and Wells Fargo should not be found in violation of a statutory provision that was not in effect at the time the Note and Mortgage loan were transferred to the Trust. The Assignment was merely to confirm the transfer that took place in 2006, and place the public on notice of the transfer.

Likewise, the Plaintiff's claim also because any TILA claim must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. 1640(e). The Secured creditor maintains that no violation occurred. However, even if a violation did occur, the violation would have taken place in 2006 when the Note and Mortgage loan was transferred into the Trust. Therefore, the Debtor would only have until 2007 to assert any claims, and is time barred from doing so now.

## POINT VIII

## THE REQUEST FOR ATTORNEY'S FEES SHOULD BE DENIED BECAUSE THERE IS NO EVIDENCE THAT WELLS FARGO COMMITTED A FRAUD UPON THE COURT OR OTHERWISE ACTED IN BAD FAITH.

It is improper for the court to issue attorneys' fees where there is no indicia of bad faith. *See In re Jensen*, 2010 Bankr. LEXIS 231 at*5 *citing Wilder v. GL Bus Lanes*, 258 F.3d 126. 130 (2d Cir. 2001). "Bad faith…is characterized as an attempt to abuse the judicial process…and [requires the Court] to determine if that party has misrepresented facts in its submissions to the Court." *In re Gorshtein*, 285 B.R. 118, at 124 (Bankr. S.D.N.Y. 2002). Similarly, "'bad faith'…means that the party was motivated by improper purposes… or "if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose…." *Grand St. Realty v. McCord*, 2005 U.S. Dist. LEXIS 45314 at *25 (E.D.N.Y. September 30, 2005). "The finding of bad faith must be supported by 'a high degree of specificity in the factual findings' of the sanctioning court." *McCord*, 2005 U.S. Dist. LEXIS 45314 at *25. "Courts must find bad faith based on clear evidence." *Minbatiwalla*, 424 B.R. at 120.

In the present case, the Debtor alleges that the execution of the Assignment and Proof of Claim was in bad faith and a fraud on the Court. As previously explained, the execution of the assignment was performed pursuant to a Corporate Resolution executed by MERS that entitled Mr. Kennerty to execute the assignment.

Additionally, there is no showing of bad faith where the creditor has supporting documentation and is entitled to be paid on the claim. The filing of a proof of claim where Wells Fargo is the servicer for the current owner of the Note cannot be found to be done in bad faith. As the servicer, Wells Fargo has a pecuniary interest in being paid in the instant bankruptcy case. Additionally, the supporting documentation attached to this response sets forth the proof to justify

the figures listed in the Proof of Claim. Therefore, the Debtor has failed to establish any bad faith and the request for attorneys' fees must be denied.

## CONCLUSION

Based on the foregoing, Wells Fargo has amply proven that the filed Proof of Claim is valid. Contrary to Debtor's baseless contention, there have been no fraudulent documents submitted to this Court. As can be seen from the proof attached to Wells Fargo's opposition papers, all of the amounts set forth in the claim are supported and thus the Court should deny the Debtor's Objection in its entirety.

Dated: January 21, 2011
        Buffalo, New York

                                        _Natalie A. Grigg_
                                        Natalie A. Grigg, Esq.